UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARL ERIK RINSCH,<br><br>Defendant. | **SEALED INDICTMENT**<br><br>25 Cr.<br><br>25 CRIM 085 |

**COUNT ONE**
**(Wire Fraud)**

The Grand Jury charges:

**Overview**

1. CARL ERIK RINSCH, the defendant, is a film and television writer and director. In or about 2018, RINSCH—through his production company (the "Rinsch Company")—entered into an agreement with a subscription video on-demand streaming service ("Streaming Company-1") to complete a science-fiction television show called "White Horse." Between in or about June 2018 and October 2019, Streaming Company-1 paid the Rinsch Company and other related entities approximately $44 million to complete White Horse.

2. Between in or about October 2019 and in or about March 2020, CARL ERIK RINSCH, the defendant, demanded additional funds from Streaming Company-1, claiming that the funds Streaming Company-1 had already sent to RINSCH were not sufficient to complete White Horse. RINSCH then falsely represented that the additional funds he demanded from Streaming Company-1 would be used to complete production on White Horse. Based on those representations, on or about March 6, 2020, Streaming Company-1 sent the Rinsch Company approximately $11 million to complete White Horse. Almost immediately, RINSCH transferred

nearly all those funds from the Rinsch Company to personal accounts he controlled, and engaged in trading in various securities using those funds. By in or about the end of April 2020, RINSCH had lost more than half of the $11 million that Streaming Company-1 had sent him to complete White Horse.

3. In or about February 2021, CARL ERIK RINSCH, the defendant, then transmitted the remaining funds to a cryptocurrency exchange, where he used the funds to purchase millions of dollars in cryptocurrency. Over the course of the next several months, RINSCH made several million dollars trading that cryptocurrency, and used those funds for personal expenses and to purchase luxury goods, including five Rolls-Royces and a Ferrari. RINSCH never delivered a completed television show to Streaming Company-1 and never returned the funds to Streaming Company-1.

### White Horse and the Streaming Company-1 Deal

4. In or about 2016 and 2017, CARL ERIK RINSCH, the defendant, began filming White Horse. White Horse was a science fiction television show about a scientist who created a group of superintelligent clones. Those clones were banished to a walled area in a Brazilian city, where they began developing advanced technology and came into conflict with humans and each other. "White Horse" is a reference to one of four horsemen of the apocalypse, who rides a white horse.

5. The production and filming of White Horse was initially funded by two media companies. While working with those media companies, CARL ERIK RINSCH, the defendant, largely completed approximately six short-form episodes of White Horse, which were each

between approximately four and ten minutes. Still images from those episodes of White Horse are below:







3

6.     In or about 2018, CARL ERIK RINSCH, the defendant, began negotiating with numerous film and television streaming platforms about purchasing White Horse. RINSCH hoped to reach an agreement with a streaming platform in which it would pay RINSCH for the existing episodes of White Horse and also fund completion of the remaining footage that, along with the already completed episodes, would comprise the first season of White Horse.

7.     In or about 2018, CARL ERIK RINSCH, the defendant, reached such a deal with Streaming Company-1. RINSCH entered into the deal through the Rinsch Company, which handled the filming of White Horse.

8.     Between in or about June 2018 and October 2019, Streaming Company-1 paid approximately $44 million for White Horse. The majority of those funds were transferred to the Rinsch Company, while some of the funds were paid to other parties that had been involved in the production of the existing episodes of White Horse.

### Streaming Company-1's Transfer of $11 Million and RINSCH's Use of Those Funds

9.     At the end of 2019, CARL ERIK RINSCH, the defendant, requested additional money from Streaming Company-1 to complete the filming of White Horse. RINSCH and Streaming Company-1 engaged in substantial negotiations about how exactly RINSCH would use the funds to work on White Horse, and, on or about March 6, 2020, Streaming Company-1 agreed to send RINSCH an additional $11 million, the entirety of which was to be spent on completing White Horse. In particular, the parties agreed that the additional $11 million paid by Streaming Company-1 was to be used for various and pre-and post-production projects, such as storyboarding; art, makeup, and costume design; paying actors, artists, and crew members; and editing footage that had already been shot.

4

10. On or about March 6, 2020, Streaming Company-1 transferred approximately $11 million to a bank account in the name of the Rinsch Company. But rather than use those funds to complete White Horse, CARL ERIK RINSCH, the defendant, quickly transferred those funds through a number of different bank accounts in the name of either the Rinsch Company, the "Carl Erik Rinsch Trust," or himself, before consolidating approximately $10.5 million of the funds in a personal brokerage account managed by a broker-dealer company ("Broker-1") on or about March 30, 2020.

11. CARL ERIK RINSCH, the defendant, then made a number of extremely risky purchases of securities, including call options on a biopharmaceutical company, and put options on an exchange traded fund that tracks the S&P 500 index. RINSCH's trades were not successful, and in less than two months after receiving $11 million from Streaming Company-1, RINSCH had lost more than half of those funds.

12. While CARL ERIK RINSCH, the defendant, was in the process of losing most of the $11 million intended to complete White Horse, he falsely informed Streaming Company-1 that White Horse was "awesome and moving forward really well," without disclosing his loss of Streaming Company-1's money through speculation on the stock market. Those communications were intended to reassure Streaming Company-1 that RINSCH was using the funds to complete White Horse, and to conceal his fraud.

13. Even after losing most of the $11 million, CARL ERIK RINSCH, the defendant, still did not spend the remaining funds he had stolen on White Horse. Instead, between in or about February 2021 and in or about May 2021, RINSCH transferred nearly all the remaining Streaming

Company-1 funds to a cryptocurrency exchange account that was also in his own name. RINSCH used those funds to speculate on cryptocurrency—which eventually proved profitable.

14. Between in or about June 2021 and in or about November 2022, CARL ERIK RINSCH, the defendant, transferred Streaming Company-1's funds from the cryptocurrency exchange to yet another personal bank account. RINSCH then spent approximately $10 million on personal expenses and luxury items, including but not limited to (i) approximately $1,787,000 on credit card bills; (ii) approximately $1,073,000 on lawyers to sue Streaming Company-1 for even more money, and for lawyers related to his divorce; (iii) approximately $395,000 to stay at the Four Seasons hotel and at various luxury rental properties; (iv) approximately $3,787,000 on furniture and antiques, including approximately $638,000 to purchase two mattresses and approximately $295,000 on luxury bedding and linens; (v) approximately $2,417,000 to purchase five Rolls-Royces and one Ferrari; and (vi) approximately $652,000 on watches and clothing.

15. CARL ERIK RINSCH, the defendant, never completed White Horse and never returned the fraudulently obtained funds to Streaming Company-1.

## STATUTORY ALLEGATIONS

16. From at least in or about October 2019 through at least in or about November 2020, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, RINSCH falsely represented to

6

Streaming Company-1 that he would use Streaming Company-1's funds to produce a television show, in order to obtain approximately $11 million, which RINSCH ultimately used for his own personal benefit, and in so doing caused an $11 million wire to be sent, as well as causing others to send and receive emails and other electronic communications to and from the Southern District of New York and elsewhere, in furtherance of his fraud.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (Money Laundering)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

18. From at least in or about March 2020 through at least on or about November 2022, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT THREE
### (Engaging in a Monetary Transaction in Property
### Derived from Specified Unlawful Activity)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

20. On or about March 30, 2020, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RINSCH transferred or caused to be transferred approximately $8,500,000 out of a bank account, consisting of proceeds from the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, to an account held at another bank, in order to deposit those funds into his brokerage account with Broker-1.

(Title 18, United States Code, Sections 1957 and 2.)

## COUNT FOUR
### (Engaging in a Monetary Transaction in Property
### Derived from Specified Unlawful Activity)

The Grand Jury further charges:

21. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

22. On or about March 31, 2020, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1),

in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RINSCH transferred or caused to be transferred approximately $168,349.57 out of his brokerage account with Broker-1, consisting of proceeds from the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, to purchase put options connected to shares of the SPDR S&P 500 ETF Trust.

(Title 18, United States Code, Sections 1957 and 2.)

## COUNT FIVE
### (Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity)

The Grand Jury further charges:

23. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

24. On or about March 31, 2020, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RINSCH transferred or caused to be transferred approximately $341,412.72 out of his brokerage account with Broker-1, consisting of proceeds from the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, to purchase put options connected to shares of the SPDR S&P 500 ETF Trust.

(Title 18, United States Code, Sections 1957 and 2.)

## COUNT SIX
### (Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity)

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

26. On or about March 31, 2020, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RINSCH transferred or caused to be transferred approximately $26,385.15 out of his brokerage account with Broker-1, consisting of proceeds from the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, to purchase call options connected to shares of Gilead Sciences, Inc.

(Title 18, United States Code, Sections 1957 and 2.)

## COUNT SEVEN
### (Engaging in a Monetary Transaction in Property Derived from Specified Unlawful Activity)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 15 of this Indictment are repeated and realleged as if fully set forth herein.

28. On or about November 3, 2021, in the Southern District of New York and elsewhere, CARL ERIK RINSCH, the defendant, within the United States, knowingly engaged and attempted to engage in a monetary transaction, as defined in Title 18, United States Code,

Section 1957(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, RINSCH transferred approximately $150,000 out of a bank account, consisting of proceeds from the wire fraud charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1343, to purchase high-end furniture.

(Title 18, United States Code, Sections 1957 and 2.)

## FORFEITURE ALLEGATIONS

29. As a result of committing the wire fraud offense alleged in Count One of this Indictment, CARL ERIK RINSCH, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

30. As a result of committing the money laundering and unlawful monetary transactions offenses alleged in Counts Two through Seven of this Indictment, CARL ERIK RINSCH, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

### Substitute Assets Provision

31. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

*Matthew Podolsky*
_____
MATTHEW PODOLSKY
Acting United States Attorney

12