UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CARL ERIK RINSCH,

          Defendant.

Case No.
25 Cr. 85 (JSR)


# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE

Law Offices of Daniel A. McGuinness, PC
Daniel McGuinnes
353 Lexington Ave, Suite 900
New York, NY 10016
(646) 360-0436
dan@legalmcg.com

Zeman & Womble, LLP
Benjamin Zeman
20 Vesey Street, Suite 400
New York, NY 10007
(718) 514-9100
zeman@brooklynattorney.nyc

# TABLE OF CONTENTS

I. The Defense Objects to the Admission of Certain Statements
   Purportedly Made by Rinsch or his Agents. ............................................................. 1

    A. The Defendant Objects and Reserves the Rights to Object to the
   Introduction of Certain Statements Made on His Behalf. ................................................1

    B. The Written Notations by Financial Advisor-1 Should Not Be Admitted. ......................2

       1. The Notes are Not Relevant and are Highly Prejudicial ....................................... 2

       2. The Notes are Not Admissible Under Rule 803(1) ................................................ 3

       3. The Notes Should Not be admissible as a Business Record ................................ 5

II. The Defense Should Not be Precluded from Introducing Evidence or
   Making Arguments Related to Defendant's Mental Health. ...................................... 6

III. The Defense Should Not be Precluded from Eliciting the Context and
   Relative Positions of the Contracting Parties............................................................. 8

IV. The Defense Should be Allowed to Question Individual-1 about her
   Theft from Defendant and Her other Motivations to be Untruthful ...................................... 10

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Donovan v. Butler*, 21-CV-337(SVN), 2024 U.S. Dist. LEXIS 17678, at *28-29 (D. Conn. Feb. 1, 2024)................................................................. 3

*Hilyer v. Howat Concrete Co.*, 578 F.2d 422, 426 n.7 (D.C. Cir. 1978) ...................... 3

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016) ................................................................. 7

*United States Football League v. National Football League*, 84-CIV-7484(PKL), 1986 U.S. Dist. LEXIS 22639, at *3-4 (S.D.N.Y. Jul 17, 1986) ................................................................................................ 4

*United States v. Cooper*, 19-cr-159 (ARR), 2019 U.S. Dist. LEXIS 182576, at *11-13 (E.D.N.Y. Oct. 22, 2019)............................................ 3

*United States v. Dupre*, 462 F.2d 131, 137 n.8 (2d Cir. 2006) .................................. 6

*United States v. Figueroa*, 23-CR-161 (MAD), 2023 U.S. Dist. LEXIS 214766, at *9 (S.D.N.Y. Dec. 1, 2023) ......................................................... 5

*United States v. Gabriel*, 125 F.3d 89, 98 (2d Cir. 1997) ......................................... 7

*United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)....................................... 5

*United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015).............................................. 7

*United States v. Murtha*, 803 Fed. Appx. 425, 427 (2d Cir. 2020) ............................ 7


<u>RULES</u>

Fed. R. Evid. 106 ........................................................................................... 1

Fed. R. Evid. 803(1) ..................................................................................... 3, 4

Discussion

I.   **The Defense Objects to the Admission of Certain Statements Purportedly Made by Rinsch or his Agents.**

    A.   The Defendant Objects and Reserves the Rights to Object to the Introduction of Certain Statements Made on His Behalf.

The government seeks to introduce several statements made by Mr. Rinsch directly and many more that were made on behalf of his purported agents. Some of the statements have been set forth in the Government's Motions in Limine, ECF No. 43 (hereinafter "Govt Mot.") while an unknown number of other statements are merely alluded to. Mr. Rinsch reserves his right to object to statements made by assistants or accountants for which an appropriate foundation is not laid or if they fall outside of their scope of employment.

The defense objects to the admission of highly redacted discovery responses made by Mr. Rinsch's counsel during an arbitration. *See* Govt Mot. at Ex. B. An unredacted, full copy of the document is attached hereto as Exhibit A. This document was prepared "solely for the purpose of [that] action" by his attorneys. The admissions were made subject to General Objections, which have been redacted by the government, and specific objections to each request. These admissions made in a formal legal document are likely to confuse the jury and should not be admitted.

Moreover, if this document is admitted, it should be fully admitted in its unredacted form pursuant to Fed. R. Evid. 106. The government's proposed exhibit omits the majority of the requests and responses and creates a misleading portrait to the jury that Mr. Rinsch's attorneys were abandoning him and admitting

1

wrongdoing. In fact, although Mr. Rinsch's counsel admitted that he did not finish editing and delivery of a first season, the remainder of the discovery responses make clear that the $11 million was earned by Mr. Rinsch for completing principal photography and that he had spent portions of that money on storyboards and shot diagrams, securing locations, production and art design, fabrication for art and costumes and other production expenses as requested by Netflix. Hiding this portion of the responses from the jury would be misleading and suggests that Mr. Rinsch's attorneys did not believe he had fulfilled his obligations, and that he was engaged in frivolous litigation.

B. The Written Notations by Financial Advisor-1 Should Not Be Admitted.

1. The Notes are Not Relevant and are Highly Prejudicial

The defense objects to the admission of Financial Advisor-1's notes. As an initial matter, the contents of the notes are not relevant to the charges and are calculated only to steer the jury towards a prejudicial character argument. Namely, that the defendant engaged in risky financial behavior and so has a propensity for the type of behavior for which he is accused.

The Indictment charges Mr. Rinsch with making fraudulent statements to Netflix to obtain money, then taking that money and using it for personal expenditures. The only relevance of his expenditures is whether they were for the production or his own personal usage. The amount of risk Mr. Rinsch was willing to engage in when investing the money is irrelevant. The fact that Mr. Rinsch was

purportedly advised that certain investments were risky is even more irrelevant, and designed only to improperly prejudice the jury against him.

### 2. The Notes are Not Admissible Under Rule 803(1)

The notations are self-serving, not contemporaneously made, not brief statements of the events observed and they contain an additional layer of impermissible hearsay. Fed. R. Evid. 803(1) permits, "A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."

"While 'precise contemporaneity' is not required and a 'slight lapse' in time between the event and recording is permissible, cases have typically focused on statements made during or mere minutes after the event in question." *Donovan v. Butler*, 21-CV-337(SVN), 2024 U.S. Dist. LEXIS 17678, at *28-29 (D. Conn. Feb. 1, 2024) (collecting cases). Even a statement made just two minutes after an event may provide enough time "to reflect and fabricate, a danger that the contemporaneity requirements guard against." *United States v. Cooper*, 19-cr-159 (ARR), 2019 U.S. Dist. LEXIS 182576, at *11-13 (E.D.N.Y. Oct. 22, 2019) (finding Police Officer's statement on a radio run less than two minutes after he was allegedly in a high speed chase not admissible under Rule 803(1)). *See e.g., Hilyer v. Howat Concrete Co.*, 578 F.2d 422, 426 n.7 (D.C. Cir. 1978) (holding that a statement made fifteen minutes after perception of event does not qualify as a present sense impression). Even if a statement is made contemporaneously or "immediately thereafter," it should not be admitted if it is inconsistent with the purposes of the Rule. *See United States Football League v. National Football*

*League*, 84-CIV-7484(PKL), 1986 U.S. Dist. LEXIS 22639, at *3-4 (S.D.N.Y. Jul 17, 1986) (finding that a memo to file memorializing a conversation designed to protect the writer was not "consistent with the trustworthiness rationale of Rule 803(1)).

The notes at issue here were made at an unknown period following the phone calls with Mr. Rinsch. In at least one case, the note was made at least an hour and fifteen minutes after the call. *See* Govt Mem. at Ex H. That record states "Carl called this morning" but was started at 1:15pm. While the "morning" reference indicates the call took place at least 75 minutes ago, there is no indication whether it took place hours earlier. Another note is entered at 12:38pm and similarly references a call occurring earlier that "morning." *See* Govt Mem. at Ex. E. None of the notes indicate how far after the calls they were made.

The notes are clearly made for the protection of the writer in the event of financial loss and ensuing litigation. They are self-serving notes regarding what the writer considers to be risky financial transactions. They are crafted not as recordings of perceptions and include information beyond the supposed recent conversations.

For example, one note contains another level of hearsay and relates back to a conversation that took place at an unknown time. The note from March 24, 2020 states: "I previously discussed this account with my branch manager Mark Webster and the parameters he set was no more the 25% of the value of the account in any one stock and no more than $250,000 in options. No margin can be used for purchases cash trades only." Govt Mem. at Ex. G (errors in original). This addition

of the branch manager statement is plain hearsay from Mr. Webster, who will not be testifying at trial.

Another note made on March 30, 2020 includes, "When he purchased the GILD is was [sic.] approximately 10% of the portfolio and the GILD options were less than 5% of the portfolio." Govt. Mem at Ex. H. This summary of the history of Mr. Rinsch's account is not a recording of contemporaneous or nearly contemporaneous observations. It is a self-serving memorandum made in case of litigation. These notes are not the type of hearsay that Rule 803(1) was designed to address and they should not be admitted under that exception.

Should the Court disagree with the defendant and admit these notations, all references to information that is not part of the conversations with Mr. Rinsch should be redacted.

          3.      <u>The Notes Should Not be admissible as a Business Record</u>

For substantially the same reasons as stated above, the records should not be admitted as business records. Fatal to the admisibility of this hearsay is the requirement at Rule 803(6)(E) that a record may be admitted "if the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." "At bottom, the purpose of the business records exception 'is to ensure that documents were not created for personal purposes or in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question.'" *United States v. Figueroa*, 23-CR-161 (MAD), 2023 U.S. Dist. LEXIS 214766, at *9 (S.D.N.Y. Dec. 1, 2023) (quoting *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010)).

These notes were created to protect Financial Advisor-1 and his firm from liability in the event of a financial loss. They were not shared with Mr. Rinsch. There was a clear motive for the writer to misrepresent his conversations with the defendant and to overstate the riskiness of the investments in his internal notes. These notations should be deemed inadmissible hearsay.

## II.     The Defense Should Not be Precluded from Introducing Evidence or Making Arguments Related to Defendant's Mental Health.

Witnesses interviewed by the government have repeatedly referenced the defendant's mental health during the relevant period immediately before and following Netflix's payment of $11 million in March 2020. The defense is not making any argument or submitting any evidence that Mr. Rinsch was or is insane. Still, the government seeks to preclude the defense from making any comment on the mental health issues that will likely be raised by its own witnesses. The limitations sought by the government would present an inaccurate and misleading portrait for the jury. Mr. Rinsch is an artist whose eccentric state of mind was fully known to Netflix executives.

The law in this Circuit expressly prohibits such a blanket prohibition. The government chiefly relies on the Insanity Defense Reform Act ("IDRA"). However, the Second Circuit announced in *United States v. Dupre*, 462 F.2d 131, 137 n.8 (2d Cir. 2006) that the IDRA does not "preclude a defendant from submitting evidence of mental health for the purposes of negating the intent element of a crime." This decision upheld the district court holding that IDRA "[n]owhere… prevent[s]

defendants from using indicators of mental disease as *evidence* to address the question of whether the Government has met its burden of intent." *United States v. Dupre*, 339 F. Supp. 2d 534, 537-38 (S.D.N.Y. 2004). It further noted the "distinction between an affirmative defense meant to excuse a crime, and evidence offered to rebut Government attempts to meet their burden of proof on intent." *Id.* at 539.

The government bears the burden of proving that Mr. Rinsch acted with fraudulent intent. To prevail on this element, the prosecution must demonstrate beyond a reasonable doubt that Mr. Rinsch did not act in good faith. *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015). Fraudulent intent may be shown by circumstantial evidence "based upon a person's outward manifestations, his words, his acts and all surrounding circumstances disclosed by the evidence and the inferences that may be drawn therefrom." *United States v. Gabriel*, 125 F.3d 89, 98 (2d Cir. 1997). "[T]he course of the parties' dealings is often a crucial source of evidence of fraudulent intent." *United States v. Murtha*, 803 Fed. Appx. 425, 427 (2d Cir. 2020) (citing *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 658 (2d Cir. 2016)).

Observations of Mr. Rinsch's behavior and his mental state are necessary pieces of circumstantial evidence bearing on his intent. The government's own witnesses perceived his behavior throughout the relevant periods and will testify at trial that he was acting erratically, conducted himself chaotically and exhibited volatile behavior. The defense must be permitted to comment on this testimony.

While the defense does not intend to make arguments that would suggest Mr. Rinsch lacked the capacity to form the requisite intent to commit the crime, that his mental state diminished his responsibility to act lawfully, or somehow that his state of mind justified the criminal allegations for which he has been charged, we must be able to respond to the testimony that the government will elicit from their witnesses about things Mr. Rinsch said, actions he took and correspondence he and his agents engaged in. The condition of his mind and mental state during the time period in question is worthy of exploration and contextualization, so the Government's request to preclude any discussions or arguments would be highly prejudicial.

### III.   The Defense Should Not be Precluded from Eliciting the Context and Relative Positions of the Contracting Parties.

This case arises from contractual negotiations between Carl Rinsch and Netflix. Specifically, the government charges Mr. Rinsch with making false statements to obtain $11 million in March 2020 for the stated purpose of continuing to work on a show for Netflix but then abandoned the show and spent the money elsewhere. Mr. Rinsch maintains that he was owed the $11 million for completing principal photography and it was Netflix that abandoned the project rather than continue to invest in its completion.

The government moves to preclude the defense from arguing that Netflix was negligent or failed to exercise due diligence. Govt Mot. at 22.  As previously communicated by the defense to the government, the defense has no intention of arguing that Mr. Rinsch is not guilty because Netflix was negligent, gullible, or insufficiently vigilant. The government seeks further relief in its motions, however,

and requests that the defense be precluded from "cross-examination regarding [Netflix's] risk tolerance or willingness to lose money." Govt Mot. at 23. It further moves to preclude the defense from cross-examining or arguing on topics of Netflix's willingness to "throw money around" because it faced competition from other streamers, and from eliciting information on Netflix's business practices such as its history of funding other projects.

Netflix's history and practice, including what it typically pays and its internal risk tolerance are critical to telling the story of what really happened in this case. It is not, as the government suggests, to blame Netflix for reliance on misrepresentations. Understanding Netflix's business and the streaming competition is necessary to proving that Mr. Rinsch made no misrepresentations. Netflix made an incredibly favorable deal to Mr. Rinsch. He was paid tens of millions of dollars for a show that had a run time of an average movie. He was granted little to no oversight in its production. And most unusually, he was given full final cut authority, which allowed him to have complete creative control over what the final product would be. Such generous contract terms and willingness to "throw money around" are largely unheard of and can only be understood because of the competition from other streamers at the time.

The March 5, 2020 email agreement forms the basis of this case. It cannot be understood without a discussion of the underlying contract in this matter. The emails make direct mention of its terms. The jury must know the context in which the contract came to be.

The jury must also be given the relevant context for why Netflix decided to abandon the show. A jury unfamiliar with Netflix's business practice would think it unthinkable to spend millions of dollars on a show that never aired. But it is simply part of a business model and tax strategy. Far from being gullible, Netflix's business strategy to invest large amounts across many shows and write off the ones that it is not satisfied with, is a profitable endeavor. Mr. Rinsch should be free to argue that his show simply landed on the wrong side of a balance sheet.

The defense should not be precluded from eliciting these facts and making these arguments as they are not blaming Netflix for a falling for a fraud, but standing as proof that no fraud existed.

## IV.   The Defense Should be Allowed to Question Individual-1 about her Theft from Defendant and Her other Motivations to be Untruthful

The defense strongly opposes any limitations on the cross-examination of Inidividual-1. This individual is central to this case. She is Mr. Rinsch's ex-wife and former producing parter. Since the events in this case, she has engaged in a vicious and draw out divorce litigation with the defendant. During the divorce, Mr. Rinsch has brought to light allegations of her misappropriating large amounts of money for her own personal use.

The government concedes that it "does not dispute the fact of the divorce and that the accusations made by Rinsch could be probative of Individual-1's truthfulness." Gov. Mot. 24. It nevertheless requests the Court to "police cross-examination on these topics to avoid digression into a sideshow…" *Id.* No such restrictions are appropriate. Individual-1 is cooperating with authorities purely to

advance her own interests and to discredit defendant. A full picture of her

motivations must be presented to the jury.

Conclusion

For the reasons stated herein, the government's motions in limine discussed
above should be denied.

Dated: New York, NY
     November 19, 2025

                    Respectfully Submitted,

                    LAW OFFICES OF DANIEL A.
                    MCGUINNESS, P.C.

              By: _____
                     Daniel A. McGuinness

                    353 Lexington Ave, Suite 900
                    New York, NY 10016
                    (646) 360-0436
                    dan@legalmcg.com
                    Counsel for CARL RINSCH

# EXHIBIT A

1  PATRICIA L. GLASER - State Bar No. 55668
   pglaser@glaserweil.com
2  ROBERT E. ALLEN - State Bar No. 166589
   rallen@glaserweil.com
3  JAMES SARGENT - State Bar No. 280968
   jsargent@glaserweil.com
4  GLASER WEIL FINK HOWARD
      JORDAN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
7
   Attorneys for Claimants/Counterclaim
8  Respondents,
   Carl Rinsch and Home VFX
9

10                    **ADR SERVICES, INCORPORATED**

11

12

13  CARL RINSCH, an individual; HOME VFX, a      **ADRS No. 22-6311-RJM**
    California corporation,
14

15          Claimants and Counterclaim
            Respondents,                          **CLAIMANTS'/COUNTERCLAIM
16                                                RESPONDENTS' RESPONSES TO FIRST
    v.                                            SET OF REQUESTS FOR ADMISSION**
17
    ICE CREAM FRIDGE, LLC, a Delaware limited
18  liability company; NETFLIX
    ENTERTAINMENT, LLC, a Delaware limited
19  liability company; and DOES 1- through 10,

20          Respondents and
            Counterclaimants.
21

22

23          Claimants/Counterclaim Respondents Carl E. Rinsch ("Rinsch") and Home VFX ("HVFX"

24  and collectively, "Claimants"), by and through their attorneys of record, hereby set forth their

25  objections and responses to the First Set of Requests for Admission propounded by

26  Respondents/Counterclaimants Ice Cream Fridge, LLC ("Ice Cream Fridge"), Netflix Entertainment,

27  LLC ("Netflix Entertainment") and Does 1-10, inclusive (collectively, "Respondents" or "Netflix").

28

**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO
FIRST SET OF REQUESTS FOR ADMISSION**

2296932

**RX 2111-1**          NFLXSDNY00107103

USAO_RINSCH_00067073

# PRELIMINARY STATEMENT

These responses are made solely for the purpose of this action. Each answer is subject to all objections as to competence, relevance, materiality, propriety and admissibility, and any and all other objections and grounds which would require the exclusion of any statement herein if the requests were asked of, or any statements contained herein were made by, a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at the time of trial.

Claimants have not completed their investigation of the facts relating to this case and have not completed their preparation for trial. The following responses are based upon information presently available to Claimants and are made without prejudice to Claimants' right to utilize subsequently discovered facts.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Claimants have answered any request should not be taken as an admission that Claimants accept or admit the existence of any facts set forth or assumed by such requests, or that such response constitutes admissible evidence. The fact that Claimants have answered part or all of any request is not intended and shall not be construed to be a waiver by Claimants of all or any part of any objection to any request made by Respondents.

The Preliminary Statement is incorporated into each of the responses set forth below.

# GENERAL OBJECTIONS

1. Claimants object to each instruction, definition, and request to the extent it seeks disclosure of information protected by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection.

2. Claimants object to each instruction, definition, and request to the extent it requires the disclosure of information that is outside the reasonable scope of discovery.

3. Claimants object to each instruction, definition, and request to the extent it seeks information outside of Claimants' possession, custody, control, or knowledge. Claimants object to any instruction, definition, or request that calls for Claimants to answer based on information in the possession, custody, control, or knowledge of other persons.

4. Claimants object to each request to the extent it purports to require an exhaustive

**RX 2111-2**

NFLXSDNY00107104

USAO_RINSCH_00067074

Glaser Weil

1  response before completion of discovery.  Claimants base their responses on information reasonably

2  available to them and reserve the right to amend or supplement their responses when and as

3  appropriate.

4      5.      Claimants object to each instruction, definition, or request that seeks to impose

5  obligations exceeding the scope of or inconsistent with the Federal Rules of Civil Procedure, ADR

6  Services, Inc.'s rules, or any other applicable law or rules.

7      6.      Claimants object to each request to the extent that it calls for a legal conclusion.

8  Claimants' responses shall not be construed as providing legal conclusions concerning the meaning

9  or application of any terms used in these requests.

10     7.      Claimants' failure to object to any request on a particular ground or grounds shall not

11 be construed as a waiver of the right to object on any additional ground(s) consistent with further

12 investigation and discovery

13     8.      Claimants object to any request that actually consists of multiple unrelated requests

14 for admission but which was framed as a single request in an attempt to circumvent the limit on the

15 number of requests for admission imposed in this lawsuit.

16     9.      Claimants object to each request to the extent that it seeks information that is neither

17 relevant to the claims and defenses in this action nor reasonably calculated to lead to the discovery

18 of admissible evidence. Claimants also object to the requests as overbroad, unduly burdensome, and

19 disproportionate to the needs of the case.

20     10.     The applicable foregoing General Objections are incorporated into each of the

21 specific objections and responses that follow as if set forth fully therein. The stating of a specific

22 objection or response shall not be construed as a waiver of these General Objections.  Claimants

23 reserve the right to assert additional objections as appropriate and to supplement these objections

24 and responses pending the outcome of further investigation and discovery.

25                    **SPECIFIC RESPONSES AND OBJECTIONS**

26 **REQUEST FOR ADMISSION NO. 1**

27 Admit that YOU do not have in your possession, custody, or control approximately 13 episodes of

28 CONQUEST ranging from approximately 4 to 14 minutes in length and totaling 110-120 minutes.

*Glaser Weil* (vertical, left margin)

3

2296932

**RX 2111-3**          NFLXSDNY00107105

USAO_RINSCH_00067075

**RESPONSE TO REQUEST FOR ADMISSION NO. 1**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the term "episodes" as it requires Claimants' speculation as to what constitutes an "episode."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

**REQUEST FOR ADMISSION NO. 2**

Admit that YOU have not finished editing all episodes of the FIRST SEASON of CONQUEST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the phrase "finished editing" as it requires Claimants' speculation as to what constitutes "finished editing."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

**REQUEST FOR ADMISSION NO. 3**

Admit that YOU have not delivered to RESPONDENTS all episodes of the FIRST SEASON of CONQUEST.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3**

Claimants object to this interrogatory to the extent it is vague and ambiguous, particularly in its use of the term "delivered" as it requires Claimants' speculation as to what constitutes "delivered."

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Admit.

**REQUEST FOR ADMISSION NO. 4**

Admit that Ice Cream Fridge, LLC owns all rights, title and interest of any kind in and to CONQUEST and all ancillary rights therein, excluding Reserved Rights as defined under the TERM SHEET and subject to Paragraph 12 of the TERM SHEET.

2296932

**RX 2111-4**

NFLXSDNY00107106

USAO_RINSCH_00067076

1 **RESPONSE TO REQUEST FOR ADMISSION NO. 4**

2       Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires

3 Claimants' speculation and/or legal interpretation as to what constitutes ownership of "all rights, title

4 and interest" and "ancillary rights."

5       Claimants incorporate their general objections as if set forth fully herein. Subject to, and

6 without waiving, these objections, and to the extent Claimants understand this request, Claimants

7 respond as follows: Deny.

8 **REQUEST FOR ADMISSION NO. 5**

9 Admit that Ice Cream Fridge, LLC owns all CONQUEST footage pursuant to the TERM SHEET.

10 **RESPONSE TO REQUEST FOR ADMISSION NO. 5**

11       Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires

12 Claimants' speculation and/or legal interpretation as to what constitutes ownership.

13       Claimants incorporate their general objections as if set forth fully herein. Subject to, and

14 without waiving, these objections, and to the extent Claimants understand this request, Claimants

15 respond as follows: Deny.

16 **REQUEST FOR ADMISSION NO. 6**

17 Admit that YOU and RESPONDENTS agreed on delivery requirements for the FIRST SEASON.

18 **RESPONSE TO REQUEST FOR ADMISSION NO. 6**

19       Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires

20 Claimants' speculation and/or legal interpretation as to what constitutes "delivery requirements."

21       Claimants incorporate their general objections as if set forth fully herein. Subject to, and

22 without waiving, these objections, and to the extent Claimants understand this request, Claimants

23 respond as follows: Admit.

24 **REQUEST FOR ADMISSION NO. 7**

25 Admit that RESPONDENTS paid the Initial Purchase Price under the TERM SHEET.

26 **RESPONSE TO REQUEST FOR ADMISSION NO. 7**

27       Claimants incorporate their general objections as if set forth fully herein. Subject to, and

28 without waiving, these objections, and to the extent Claimants understand this request, Claimants

2296932

Glaser Weil

**RX 2111-5**

NFLXSDNY00107107

USAO_RINSCH_00067077

1    respond as follows: Admit.

2    **REQUEST FOR ADMISSION NO. 8**

3    Admit that RESPONDENTS paid the Supplemental Purchase Price under the TERM SHEET.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 8**

5    Claimants incorporate their general objections as if set forth fully herein. Subject to, and

6    without waiving, these objections, and to the extent Claimants understand this request, Claimants

7    respond as follows: Admit.

8    **REQUEST FOR ADMISSION NO. 9**

9    Admit that RESPONDENTS advanced to CLAIMANTS $10.3 million of the $11.218 million

10   payment due under the TERM SHEET upon completion of principal photography of the FIRST

11   SEASON.

12   **RESPONSE TO REQUEST FOR ADMISSION NO. 9**

13   Claimants incorporate their general objections as if set forth fully herein. Subject to, and

14   without waiving, these objections, and to the extent Claimants understand this request, Claimants

15   respond as follows: Deny.

16   **REQUEST FOR ADMISSION NO. 10**

17   Admit that CLAIMANTS have not completed principal photography of the FIRST SEASON.

18   **RESPONSE TO REQUEST FOR ADMISSION NO. 10**

19   Claimants incorporate their general objections as if set forth fully herein. Subject to, and

20   without waiving, these objections, and to the extent Claimants understand this request, Claimants

21   respond as follows: Deny.

22   **REQUEST FOR ADMISSION NO. 11**

23   Admit that CLAIMANTS have not delivered to RESPONDENTS a signed rights assignment/long-

24   form agreement and a production services agreement for HVFX's production services in connection

25   with the remaining episodes of the FIRST SEASON, pursuant to paragraph 7.c(iii) of the TERM

26   SHEET.

27   **RESPONSE TO REQUEST FOR ADMISSION NO. 11**

28   Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires

6

**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO**
**FIRST SET OF REQUESTS FOR ADMISSION**

2296932

NFLXSDNY00107108

USAO_RINSCH_00067078

1  Claimants' speculation and/or legal interpretation as to what constitutes "a signed rights
2  assignment/long-form agreement and a production services agreement."

3      Claimants incorporate their general objections as if set forth fully herein. Subject to, and
4  without waiving, these objections, and to the extent Claimants understand this request, Claimants
5  respond as follows: Admit.

6  **REQUEST FOR ADMISSION NO. 12**

7  Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid
8  CLAIMANTS under the BN AGREEMENT to pay for "Storyboards & Shot Diagrams for Every
9  Shot," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020
10 (NETFLIX_000011073).

11 **RESPONSE TO REQUEST FOR ADMISSION NO. 12**

12     Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires
13 Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party,
14 namely, Bryan Noon.

15     Claimants incorporate their general objections as if set forth fully herein. Subject to, and
16 without waiving, these objections, and to the extent Claimants understand this request, Claimants
17 respond as follows: Deny.

18 **REQUEST FOR ADMISSION NO. 13**

19 Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid
20 CLAIMANTS under the BN AGREEMENT to pay for "Secured Location Contracts," as that phrase
21 was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

22 **RESPONSE TO REQUEST FOR ADMISSION NO. 13**

23     Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires
24 Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party,
25 namely, Bryan Noon.

26     Claimants incorporate their general objections as if set forth fully herein. Subject to, and
27 without waiving, these objections, and to the extent Claimants understand this request, Claimants
28 respond as follows: Deny.

Glaser Weil

**REQUEST FOR ADMISSION NO. 14**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Production Designs, Art Designs, Costume Designs, Hair/Makeup Designs," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 14**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 15**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Fabrication for Art/Costume," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 16**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Block Calendar, MM Breakdown, Shooting Schedule," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

2296932

Glaser Weil

**RX 2111-8**

NFLXSDNY00107110

USAO_RINSCH_00067080

**RESPONSE TO REQUEST FOR ADMISSION NO. 16**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 17**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Pay or Play on Key Crew/Actors/Artists," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 17**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 18**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Budgets/PSA Contracts," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 18**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and

9

2296932

**RX 2111-9**

NFLXSDNY00107111

USAO_RINSCH_00067081

without waiving, these objections, and to the extent Claimants understand this request, Claimants

respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 19**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Editor and Support Team for Editorial on Existing Material," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 19**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

**REQUEST FOR ADMISSION NO. 20**

Admit that CLAIMANTS did not use any of the $11 million that RESPONDENTS paid CLAIMANTS under the BN AGREEMENT to pay for "Production Insurance, Legal Overhead, Accounting Overhead, Office Space," as that phrase was used in Bryan Noon's email to Richard Kendall dated March 4, 2020 (NETFLIX_000011073).

**RESPONSE TO REQUEST FOR ADMISSION NO. 20**

Claimants object to this interrogatory to the extent it is vague and ambiguous as it requires Claimants' speculation and/or legal interpretation as to wording used in an email sent by a third-party, namely, Bryan Noon.

Claimants incorporate their general objections as if set forth fully herein. Subject to, and without waiving, these objections, and to the extent Claimants understand this request, Claimants respond as follows: Deny.

CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO
FIRST SET OF REQUESTS FOR ADMISSION

2296932

**RX 2111-10**

NFLXSDNY00107112

USAO_RINSCH_00067082

DATED:  June 16, 2023

GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP

By: _____
PATRICIA L. GLASER
ROBERT E. ALLEN
JAMES SARGENT

Attorneys for Claimants/Counterclaim
Respondents

**CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO
FIRST SET OF REQUESTS FOR ADMISSION**

2296932

**RX 2111-11**

NFLXSDNY00107113

USAO_RINSCH_00067083

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN LOS ANGELES**

3      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 10250 Constellation Boulevard, 19th 4 Floor, Los Angeles, California 90067.

5      On June 16, 2023, I served the following document(s) described as **CLAIMANTS'/COUNTERCLAIM RESPONDENTS' RESPONSES TO FIRST SET OF** 6 **REQUESTS FOR ADMISSION** as follows:

7  ARWEN R. JOHNSON              *Attorney for Respondents and*
arwen.johnson@kslaw.com         *Counterclaimants Ice Cream Fridge, LLC and*
8  JEFFREY M. HAMMER           *Netflix Entertainment, LLC*
jhammer@kslaw.com
9  JENNY PELAEZ
jpelaez@kslaw.com
10  BRITTANY L. LITZINGER
blitzinger@kslaw.com
11  KING & SPALDING LLP
633 West Fifth Street, Suite 1600
12  Los Angeles, California 90071
Telephone: (213) 443-4355
13  Facsimile: (213) 443-4310

14

15      **BY E-MAIL:** I caused such document(s) to be electronically delivered from the email address learly@glaserweil.com to the email addressee(s) set forth herein.  I did not receive, within a 16 reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

17      I declare under penalty of perjury under the laws of the State of California that the foregoing 18 is true and correct.

19      Executed on June 16, 2023, at Los Angeles, California.

20

21                       _____
                       Lacey Early

22

23

24

25

26

27

28

*Glaser Weil*

**RX 2111-12**          NFLXSDNY00107114

USAO_RINSCH_00067084