UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

CARL ERIK RINSCH,

Defendant.

25 Cr. 85 (JSR)

**THE GOVERNMENT'S REQUEST FOR A RETAIN CHARGE**

JAY CLAYTON
United States Attorney for the
Southern District of New York

Timothy Capozzi
David Markewitz
Adam Sowlati
Assistant United States Attorneys
  *Of Counsel*

**Table of Contents**

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT................................................................................................................................... 2

I.     The Second Circuit's Opinion in *Countrywide* Supports a Retain Charge......................... 2

II.    Other Authority Supports the Retain Charge.................................................................... 4

CONCLUSION............................................................................................................................... 7

**Table of Authorities**

**Pages**

**Cases**

*U.S. ex rel. O'Donnell v. Countrywide Home Loans ("Countrywide"),*
  822 F.3d 650 (2d Cir. 2016) ................................................................................................. 2

*United States v. Naiman,*
  211 F.3d 40, 44, 49 (2d Cir. 2000) ...................................................................................... 3

*United States v. Frank,*
  156 F.3d 332, 334–36 (2d Cir.1998) .................................................................................... 3

*First Bank of the Ams. v. Motor Car Funding,*
  257 A.D.2d 287, 289, 291–92, 690 N.Y.S.2d 17 (1st Dep't 1999)) .................................... 3

*Bridgestone/Firestone Inc. v. Recovery Credit Services, Inc.,*
  98 F.3d 13, 19-20 (2d Cir. 1996) ......................................................................................... 4

*Brick v. Cohn-Hall-Marx Co.,*
  276 N.Y. 259, 264 (1937) ..................................................................................................... 4

*Blank v. Baronowski,*
  959 F. Supp. 172, 180 (S.D.N.Y. 1997) ............................................................................... 4

*United States v. Gole,*
  158 F.3d 166, 167 (2d Cir. 1998) ......................................................................................... 4

*Porcelli v. United States,*
  404 F.3d 157, 162-63 (2d Cir. 2005) .................................................................................... 5

*Pasquantino v. United States,*
  544 U.S. 349, 353-55 (2005) ................................................................................................ 5

*Carpenter v. United States,*
  484 U.S. 19, 25 (1987) .......................................................................................................... 5

*United States v. Bach,*
  172 F.3d 520, 522 (7th Cir. 1999) ........................................................................................ 5

*United States v. Reichel,*
  911 F.3d 910, 915 (8th Cir. 2018) ........................................................................................ 5

*United States v. McMillan,*
  600 F.3d 434, 449 (5th Cir. 2010) ........................................................................................ 5

*United States v. Ely,*
  142 F.3d 1113 (9th Cir. 1997) .............................................................................................. 5

*United States v. Darden,*
  23 Cr. 134 (S.D.N.Y. Oct. 3, 2024) ...................................................................................... 6

*United States v. Bankman-Fried,*
  22 Cr. 673 (S.D.N.Y. Nov. 2, 2023) ..................................................................................... 6

**PRELIMINARY STATEMENT**

The Government respectfully requests that the Court include the following charge (the "Retain Charge"):

> If, after having obtained money or property, the defendant devised or participated in a fraudulent scheme to deprive the alleged victim of that money or property by keeping or retaining the money or property through making a subsequent false or fraudulent misrepresentation as to a material fact, that is sufficient to establish the existence of a scheme to defraud.[1]

The Government's primary argument at closing will be that the defendant's scheme began in the months leading up to the March 5, 2020 agreement (the "March 5 Agreement")—that is, the Government will contend that the defendant made numerous material misrepresentations with fraudulent intent before and at the time of Netflix's $11 million payment to induce that payment. But even if the jury determines that the defendant did not form such specific intent to defraud until *after* the March 5 Agreement, he nevertheless committed wire fraud by making a series of material misrepresentations with fraudulent intent that were intended to enable him to retain the money. The Retain Charge is consistent with Second Circuit authority, conforms with the evidence adduced at trial, and has been used in several recent fraud trials in this District.

---

[1] Adapted from the jury charges of the Honorable Vernon S. Broderick in *United States v. Calvin Darden, Jr.*, 23 Cr. 134 (S.D.N.Y. Oct. 3, 2024) ("To sustain its burden of proof with respect to the offense charged in Count Two, the government must prove beyond a reasonable doubt the following three elements: First, there was a scheme or artifice to defraud or to obtain or retain money or property by materially false and fraudulent pretenses, representations, or promises . . .") and the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, 22 Cr. 673 (S.D.N.Y. Nov. 2, 2023) ("It is not necessary for the government to prove that a false or misleading -- excuse me -- false or fraudulent representation or statement was made prior to a customer's or lender's decision to part with money or property. Rather, if after having obtained money or property, the defendant devised or participated in a fraudulent scheme to deprive the alleged victim of that money or property by keeping the money or property through making a subsequent false or fraudulent misrepresentation as to a material fact, that is sufficient to establish the existence of a scheme to defraud.").

**ARGUMENT**

**I.**      **The Second Circuit's Opinion in *Countrywide* Supports a Retain Charge**

The Government's proposed Retain Charge is consistent with *U.S. ex rel. O'Donnell v. Countrywide Home Loans* ("*Countrywide*"), 822 F.3d 650 (2d Cir. 2016). Under *Countrywide*, the defendant's post-March 5 Agreement misrepresentations to Netflix standing alone can sustain his conviction of wire fraud.

In *Countrywide*, 822 F.3d 650 (2d Cir. 2016), the Government alleged that defendants had violated the mail and wire fraud statutes by selling poor-quality mortgages. *Id.* at 652. The Government alleged that the defendants (or employees thereof) knew of pre-existing contractual representations about the mortgages, knew that certain loans were originated inconsistent with those representations, and nonetheless sold the loans pursuant to those contracts. *Id.* at 655. The Second Circuit determined that, at trial, the Government had identified provisions in the relevant contracts as the representations underlying its fraud claim but offered no evidence of "any other representations, suggestions, or promises" post-dating execution of the contracts that were made with fraudulent intent to induce the purchase of the loans. *Id.* at 664. Importantly, the Second Circuit found no evidence of any "promise, statement, or representation outside of the contract made to induce loan sales *or to mask nonperformance*." *Id.* at 665 (emphasis added). The Second Circuit concluded that the Government's proof at trial was insufficient to establish fraud because "[t]he only representations alleged to be false were guarantees of future quality made in contracts as to which no proof of contemporaneous fraudulent intent was introduced at trial." *Id.* at 663 (finding that the Government had failed to prove "that Countrywide made any . . .

misrepresentations [after the contracts at issue were executed]—*i.e.*, ones not contained in the

contracts—as to which fraudulent intent could be found").[2]

*Countrywide* did not abrogate or even question the correctness of such cases where, as

here, "defendants made affirmative fraudulent misrepresentations to their contractual counterpar-

ties in the course of performance or to feign performance under the contract." *Id.* at 658 (citing

*United States v. Naiman*, 211 F.3d 40, 44, 49 (2d Cir. 2000), which involved submission of false

certifications of compliance required by contracts).  Indeed, the Second Circuit recognized that

"deception is the core of fraud" and found that the law of such cases was "perfectly consistent

with" its holding.  *Id.* at 661 n.12 (citing *Naiman*, 211 F.3d at 49; *United States v. Frank*, 156

F.3d 332, 334–36 (2d Cir.1998); and *First Bank of the Ams. v. Motor Car Funding*, 257 A.D.2d

287, 289, 291–92, 690 N.Y.S.2d 17 (1st Dep't 1999)).

Unlike in *Countrywide*, the trial record here is replete with false and misleading represen-

tations by Rinsch intended "to mask nonperformance." *Id*. at 665. There is ample evidence of

misrepresentations to Netflix outside of and post-dating the March 5 agreement made to mask the

defendant's nonperformance with that agreement, including, among many instances, his March 10

statement that the production on White Horse was "moving forward diligently" (GX 6361); his

April 20 statements that the show was "awesome and moving forward really well" and that work

"hasn't stopped (or even slowed)" despite the ongoing pandemic (GX 6368B at 2, 10); his June 4

statement that the production was "getting there" (*i.e.*, moving towards completion) (GX 6368C

---

[2] Because the *Countrywide* jury was charged "only as to a theory of fraud through an affirmative
misstatement," the Second Circuit did not decide "how fraud through silence in the context of a
contractual relationship would operate." *Id.* at 663 n.14; *see also id.* at 665 n.18 ("[T]he jury was
not charged as to—and therefore could not have found—liability as a result of fraudulent silence.
Accordingly, the Government had to prove some affirmative statement—either wholly false or
partially true but misleading—as to which the requisite scienter was present.").

3

at 2); and his July 1 message that he had "[l]ots to share. Good news. All of it." (GX 6368D at 3).

Nor does Countrywide's reference to *Bridgestone/Firestone Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996), undermine the accuracy of the Retain Charge. Even if the federal mail and wire fraud statutes could be governed by the New York law described in *Bridgestone/Firestone* against duplicative fraud and breach of contract claims, Rinsch's misrepresentations of present fact were "collateral or extraneous to the contract" and accordingly fall within an exception to that rule. *Id.* at 20. As the New York Court of Appeals stated in *Brick v. Cohn-Hall-Marx Co.*, 276 N.Y. 259, 264 (1937), a statement "lulling the plaintiffs into the belief" that a contract is being performed is "fraud extraneous to the contract." *See also Blank v. Baronowski*, 959 F. Supp. 172, 180 (S.D.N.Y. 1997) (post-contract misrepresentations are statements of present fact extraneous to the contract and sufficient to support fraud clam).[3] For these reasons, the Retain Charge is properly tailored and consistent with *Countrywide*.

## II.    Other Authority Supports the Retain Charge

The Retain Charge is accurate under the law and appropriate in this case.

For purposes of wire fraud, obtaining money or property includes not only acquiring property, but also retaining property that would otherwise be in someone else's hands. Fraudulently retaining property that should be turned over to someone else is, in effect, wrongfully obtaining the continued use and possession of that property. *See, e.g.*, *United States v. Gole*, 158

---

[3] In *Countrywide*, the Second Circuit left open whether the *Bridgestone/Firestone* exception for collateral misrepresentations is incorporated into federal statutes but recognized that its prior decisions "are certainly consistent" with such a theory of fraud. 822 F.3d at 666 at n.19 (citing *Frank*, 156 F.3d at 334-36 (2d Cir. 1998), which affirmed a fraud conviction where a defendant misrepresented that a service had been performed according to a contract's specifications, and *Naiman*, 211 F.3d at 49, which affirmed a fraud conviction for falsely certifying whether money was used in accordance with contractual terms)).

F.3d 166, 167 (2d Cir. 1998) (affirming mail fraud conviction of firefighter who "filed false in-come reports to retain pension overpayments"); *Porcelli v. United States*, 404 F.3d 157, 162-63 (2d Cir. 2005) (affirming denial of *coram nobis* petition filed by defendant who was convicted of mail fraud for filing false tax returns and noting that "the District Court held correctly that . . . neither the mail nor wire fraud statute requires that a defendant 'obtain' property before violating the statute") (internal quotation omitted); *see also Pasquantino v. United States*, 544 U.S. 349, 353-55 (2005) (holding that scheme to withhold tax revenue was a scheme to obtain property un-der the wire fraud statute); *Carpenter v. United States*, 484 U.S. 19, 25 (1987) (holding that wire fraud encompasses embezzlement); *United States v. Bach*, 172 F.3d 520, 522 (7th Cir. 1999) (mailings that failed to elicit additional money from fraud victims furthered scheme to "obtain and retain" payments by duped investors); *United States v. Reichel*, 911 F.3d 910, 915 (8th Cir. 2018) (affirming conviction where "[t]he superseding indictment alleges a single 'scheme to de-fraud and to obtain and retain money by means of materially false and fraudulent pretenses'"); *United States v. McMillan*, 600 F.3d 434, 449 (5th Cir. 2010) (affirming conviction where Gov-ernment charged that defendant sought "to retain the money rather than pay it out to satisfy claims of the medical providers" because the "victims were left without money that they other-wise would have possessed"); *United States v. Ely*, 142 F.3d 1113 (9th Cir. 1997) (holding that the right to collect a debt can constitute a cognizable property interest for purposes of bank fraud).

    *Gole* is illustrative. The defendant was charged and convicted of mail fraud for filing false income reports in 1995 to retain pension overpayments by the New York City Fire Depart-ment in 1991, 1993, and 1994. 158 F.3d at 167. The Second Circuit set forth the elements of that crime, including the requirement that the object of the charged scheme be money or

5

property, and, in upholding the conviction, explained that it was "clear" that money was the object of the defendant's scheme because the defendant in that case had made misrepresentations "to keep money he would have otherwise have been obligated to return." *Id.*

The same logic applies here. It is clear that the defendant's scheme involved making materially false representations to Netflix to retain the $11 million that it had transferred to him pursuant to the March 5 Agreement. This was money that he would have been obligated to return had he told the truth—that he intended to use the money to make risky bets and buy luxury items—and money which, absent the misrepresentations, Netflix could have taken steps to recoup. *Cf. Bach*, 172 F.3d at 522 ("mailings designed to make . . . investors think that the defendant was legit, and thus to reduce the likelihood that they would complain to the SEC or take other steps designed to recoup their losses, were indeed in furtherance of" scheme to "obtain and retain" payments made by investors).

Accordingly, the Court should give the Retain Charge, as other courts in this district have done. *See, e.g.*, *United States v. Darden*, 23 Cr. 134 (S.D.N.Y. Oct. 3, 2024) (involving allegations of misrepresentations made after transfer of funds to victim); *United States v. Bankman-Fried*, 22 Cr. 673 (S.D.N.Y. Nov. 2, 2023) (involving scheme to retain loans).

## CONCLUSION

The Court should include the Retain Charge in its charge to the jurors.

Dated:      New York, New York
            December 7, 2025

                              Respectfully submitted,

                              JAY CLAYTON
                              United States Attorney
                              Southern District of New York

6

By: /s/_____
Timothy Capozzi
David Markewitz
Adam Sowlati
Assistant United States Attorneys
Southern District of New York

7