```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        -v-<br><br>CARL ERIK RINSCH,<br><br>                Defendant. | 25-cr-85 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.:

Fraud classically consists of obtaining a victim's money or property by means of lies. If it is done intentionally and involves the use of the mail or interstate wires, it becomes a federal crime. See 18 U.S.C. §§ 1341, 1343. Having obtained the victim's money or property, the fraudster will sometimes continue to lie to the victim in order to cover his tracks. This latter kind of lying, known as "lulling," is frequently admitted in evidence as further proof of the fraudster's intent. See, e.g., United States v. Angelilli, 660 F.2d 23, 36-37 (2d Cir. 1981). But in the above-captioned case, the Government advanced the theory that, even if a person obtained another person's money or property legitimately and without lying, he was guilty of federal criminal fraud if he subsequently lied to the victim in order to retain the money he had legitimately obtained. The Court rejected this theory -- and the Government, without resort to this theory, easily managed to convict the defendant of federal fraud. But the Court writes now

1

(as it promised the parties it would) to explain why it rejected the Government's "fraudulent retention" theory.

I.  Background

As charged, defendant Carl Erik Rinsch is a film and television writer and director who, around 2018, arranged with Netflix to produce a science fiction show called *White Horse* in exchange for $44 million dollars. But around the end of 2019, Rinsch asked Netflix for an additional $11 million, representing that this would be used to fund certain additional specified production-related tasks. The indictment, in alleging that Rinsch had committed federal wire fraud in violation of 18 U.S.C. § 1343, charged that this was all a pack of lies and that Rinsch actually intended to use the $11 million to fund his lavish lifestyle and for other personal uses having nothing to do with *White Horse*. But Netflix was fooled and, on March 6, 2020, wired $11 million to a bank account in the name of Rinsch's production company.

This stated a conventional wire fraud claim. But the indictment further alleged that, after receiving the $11 million, Rinsch continued to lie to Netflix to conceal this fraud. While this, again, was conventional "lulling," the Government went further and contended that the indictment properly charged two alternative theories of wire fraud. Under the first, more conventional theory, the Government argued that Rinsch violated the statute by lying to Netflix to obtain the $11 million for his

2

personal use. Under the second, more novel theory, the Government contended that even if Rinsch had not lied to obtain the $11 million, he could still be guilty of wire fraud based on his later misrepresentations made to "retain" those funds.

The Court ordered supplemental briefing and heard arguments on the second theory, ECF Nos. 50, 51, but after full review and consideration of the parties' arguments, the Court rejected the second theory, see ECF No. 66, Trial Transcript at 844-46, and instructed the jury only with respect to the first theory. See ECF No. 54. So instructed, the jury found Rinsch guilty of wire fraud, as well as certain other crimes not relevant to this Opinion.

II. Discussion

The first sentence of the federal wire fraud state (which is the only sentence here relevant) reads as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years or both.

18 U.S.C. § 1343. The first words of this sentence, through the word "promises," is copied from the earlier-enacted mail fraud statute, 18 U.S.C. § 1341, and the substantive reach of both statutes is construed identically. See Ciminelli v. Untied States, 598 U.S. 306, 312 n.2 (2023). At one time, the lower courts

3

believed that a scheme or artifice "to defraud" was broader than a scheme or artifice "for obtaining money or property," but this theory was soundly rejected by the Supreme Court in the mail fraud case of McNally v. United States, 483 U.S 350 (1987).

Indeed, even before McNally, this conclusion should have been (but was not) obvious to the lower courts, because of the history of the mail fraud statute. As originally enacted in 1872, the mail fraud statute contained only the "scheme or artifice to defraud" language. The "obtaining money or property by means of false and fraudulent pretenses, representations, or promises" language was only added in 1909. If "scheme or artifice to defraud" was broader than "for obtaining money or property," why would Congress have added more narrow language? But, as any careful reading of the statutory history (which, alas, was not undertaken by any of the lower courts prior to McNally) makes clear, the words "to defraud" in the original mail fraud statute of 1872 reflected the narrow common law meaning of fraud -- to obtain money or property by means of false affirmative statements of present facts, McNally, 483 U.S. at 358-60 -- and the reason for amending the statute in 1909 was to clarify that the statute could also reach obtaining money or property by means of "false or fraudulent pretenses,

representations or promises," i.e., a broader dimension of lies than the common law meaning of fraud permitted.[1]

In short, under either provision, what the statute proscribes is limited to obtaining money and property by fraudulent means. See McNally, 483 U.S. at 358-60. To "obtain" means "[t]o bring into one's own possession; to procure." Obtain, Black's Law Dictionary (12th ed. 2024). The term describes acquisition: one may obtain a job, obtain wealth, or obtain a loan. Id. "Retain," by contrast, means "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss." Retain, Black's Law Dictionary (12th ed. 2024). The distinction is straightforward. To obtain is to gain; to retain is to keep what one already has. Accordingly, because the wire fraud statute criminalizes schemes "for obtaining money or property," its plain text does not reach schemes directed solely at retention.

Although the Court need not look beyond the statute's plain text, the absence of supporting precedent only reinforces the conclusion compelled by that text. Despite being afforded an opportunity to do so, the Government was unable to identify a single case in which a defendant was prosecuted for wire fraud

---

[1] This had also been suggested by the Supreme Court earlier in 1909 in the case of Durland v. United States, 161 U.S. 306 (1896), which the 1909 amendment effectively codified. See generally Jed S. Rakoff, The Federal Mail Fraud Statute (Part I), 18 Duquesne L. Rev. 771 (1980).

based on the lawful receipt of money followed by later misrepresentations aimed solely at retaining it.

Instead, the Government chiefly relies on a civil case, <u>United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.</u>, 822 F.3d 650 (2d Cir. 2016), that in this Court's view is largely irrelevant but, if anything, supports the Court's conclusion here. The question in <u>Countrywide</u>, as stated in its first sentence, is "[w]hen can a breach of contract also support a claim of fraud?" <u>Id.</u> at 652. Specifically, defendant Countrywide Home Loans, Inc. had contracted to supply Government agencies with mortgages of a high quality but, after initially so doing, began secretly providing mortgages of much more doubtful quality. The Second Circuit held that, since there was no evidence that Countrywide made any misrepresentations to the Government agencies when it first entered into the contract, what thereafter occurred was at most an intentional breach of contract, but not fraud. This, if anything, shows why the Government rightly chose not to pursue any fraud charge against Rinsch in connection with his original $44 million contract with Netflix, which he entered into without misrepresentation but the non-performance of which he later tried to obscure. And <u>Countrywide</u> likewise supports the decision to charge Rinsch with fraud in connection with Rinsch's entry into the later $11 million contract, where he told lies from the outset to obtain the $11 million. But the holding of the case is

6

completely irrelevant to the "obtains" versus "retains" issue here presented.

The Government's other cited Second Circuit cases are even further afield. In United States v. Gole, 158 F.3d 166 (2d Cir. 1998), a firefighter was convicted of mail fraud for filing false income reports in order to retain pension overpayments. Id. at 167. The defendant was entitled to receive his full pension only if his annual earnings remained below a specified threshold. Id. Although he earned income exceeding that limit, he continued to receive his full pension because he failed to submit the required annual income report after the pension bureau initially neglected to send him the form. Id. But his conviction ultimately rested on his later submission of the form in which he falsely underreported his earnings for prior years. Id. Thus, even though his motive for filing the false form was to retain pension overpayments, his conviction rested on his making affirmative misrepresentations in the form he was required to, and ultimately did, file, in order to obtain pension money he was not entitled to.

The Government's reliance on Porcelli v. United States, 404 F.3d 157 (2d Cir. 2005) fares no better. The case arose on collateral review and addressed the narrow question whether the Supreme Court's construction of the Hobbs Act in Scheidler v. National Organization for Women, 537 U.S. 393 (2003) altered otherwise settled mail fraud precedent. The Court held that it did

not, because whereas the Hobbs Act required the Government to prove that the defendant had actually obtained money or property by his extortion, the mail fraud statute only required the defendant to devise a scheme to obtain money or property, even if he never carried out the scheme or failed to carry it out successfully. Again, this has nothing to do with the issue of whether mail or wire fraud covers the retaining of money that has been lawfully obtained, even if the retaining is accompanied by lies.

III. Conclusion

The Court does not wish to be misunderstood as suggesting that Congress could not choose to criminalize the retaining through lies of money or property lawfully obtained. But Congress simply has not done so, at least not under the mail and wire fraud statutes. It was for this reason that the Court rejected the Government's alternative theory of liability under the wire fraud statute in this case.

New York, NY
January 21, 2026

JED S. RAKOFF, U.S.D.J.