UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,

    -v-

CARL ERIK RINSCH,

           Defendant.
```

25-cr-85 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Carl Rinsch was convicted by a jury on December 11, 2025, of one count of wire fraud, in violation of 18 U.S.C. § 1343 and 2, one count of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, and five counts of engaging in a monetary transaction in property derived from specified unlawful activity, in violation of 18 U.S.C §§ 1957 and 2. These convictions stemmed from Rinsch's communications with Netflix in March 2020, when the streaming service, in response to false representations by Rinsch, transferred $11 million to the defendant. Rinsch now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons set forth below, the motion is denied.

I.    Background

Rinsch was the creator, writer, producer, and director of *White Horse*, a television series he began filming around 2013. Trial Transcript ("Tr.") 883:20-21. In November 2018, Rinsch and

1

Netflix executed a term sheet under which Netflix agreed to pay approximately $61 million for the right to acquire and distribute the series, with payments tied to specified production milestones. Government Trial Exhibit ("GX") 2008; GX 6336 ¶ 7; Tr. 276:7-277:23. By early 2020, however, the parties were in dispute over whether one or more milestones had been reached. See, e.g., GX 6352 at 2; Tr. 298:25-299:1, 614:20-615:3.

On March 4, 2020, Netflix executive Bryan Noon proposed advancing Rinsch $11 million, subject to express conditions. Specifically, Rinsch would agree to "use the $11M to fund" a specific Task List of production-related work, the payment would "not represent an acknowledgment of any of the contractual milestones," and Rinsch would provide Netflix with weekly project updates. GX 6358 at 5-6. Rinsch accepted these terms. See GX 6358; GX 6359.

Netflix wired the $11 million to Rinsch's production company account on March 6, 2020. GX 2001. The following business day, Rinsch opened a new Home VFX savings account and transferred $10.5 million into it. Tr. 402:24-403:12; GX 3026. One week later, Rinsch wired $8 million from that account into his personal Wells Fargo brokerage account and moved the remaining $2 million into a Charles Schwab brokerage account. GX 2001; GX 3027 at 6. On March 31, 2020, Rinsch invested over $6.2 million in options trades. GX 3027 at 61. Within weeks, Rinsch lost nearly all of that money. GX 3030 at

2

7. In early 2021, Rinsch transferred remaining funds into a cryptocurrency account and invested in Dogecoin, ultimately at a profit. Tr. 410:24-411:2; GX 2010. He subsequently made a series of purchases of luxury goods and vehicles. Tr. 452:8-18. According to the Government's evidence, little or none of the money was used on the *White Horse* project.

This fact, along with the immediacy in which the $11 million was transferred into several accounts and used for personal purposes, clearly showed, according to the Government, that Rinsch had never intended to use the $11 million on *White Horse* and had lied in order to obtain the funds, the true use of which he then disguised through the transfers referred to in the money-laundering counts.

## II. Legal Standard

After a jury verdict, a defendant may challenge the sufficiency of the evidence presented at trial by moving for a judgment of acquittal under Federal Rule of Criminal Procedure 29. But the defendant bears a "heavy burden." United States v. Caracappa, 614 F.3d 30, 43 (2d Cir. 2010).[1] A jury's verdict will withstand a Rule 29 challenge so long as "any rational trier of fact could have found the essential elements of the crime charged

---

[1] Except where otherwise indicated, all quotations in this Order omit citations, internal quotation marks, footnotes, brackets, ellipses, and other non-substantive alterations in source material.

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Court views the evidence in the light most favorable to the Government, see United States v. Coté, 544 F.3d 88, 98 (2d Cir. 2008), and draws all inferences in the Government's favor, see United States v. Puzzo, 928 F.2d 1356, 1361 (2d Cir. 1991). And the Court may not substitute its own judgment on credibility or the weight of the evidence for what the jury decided. United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000).

Federal Rule of Criminal Procedure 33 authorizes a court to "grant a new trial if the interest of justice so requires." Unlike a Rule 29 motion, Rule 33 motions do not require the court to view the evidence in the light most favorable to the Government. United States v. Mizrahi, 2024 WL 3824104, at *3 (S.D.N.Y Aug. 15, 2024). Still, "motions for a new trial are disfavored in this Circuit," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995), and district courts should grant the motion only if the court finds "a real concern that an innocent person may have been convicted," United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992), or if it would be "manifest injustice to let the verdict stand," United States v. Archer, 977 F.3d 181, 188 (2d Cir. 2020).

III. Discussion

Rinsch's motion argues that the evidence presented at trial cannot support the jury's verdict. Rinsch acknowledges that Netflix transferred $11 million to him, and that at least some of

that money was used for purposes other than *White Horse*, but he contends that he never represented to Netflix he would use the entirety of the $11 million for *White Horse*, and that, even if he did so represent, he did not do so with intent to defraud Netflix.

Both arguments fail under Rule 29 and Rule 33. The record, viewed under either standard, was more than sufficient for a reasonable jury to conclude, beyond a reasonable doubt, that Rinsch defrauded Netflix and that he possessed the requisite intent to do so at the time he accepted the $11 million payment in March 2020.

First, there was ample evidence at trial that Rinsch agreed to use the $11 million exclusively for *White Horse*. Netflix executive Bryan Noon's March 4, 2020 proposal stated expressly that Rinsch's company would "use the $11M to fund" the Task List items relating to the *White Horse* project. GX 6358 at 5-6. Every Netflix executive who testified confirmed that the payment was made on the understanding that the full amount would go toward the project. Tr. 102:6-10; Tr. 287:14-21, 297:12-20, 304:22-24; Tr. 632:1-12. Indeed, when asked why she believed Rinsch would use the $11 million for *White Horse*, one executive responded: "He told me so." Tr. 632:1-12.

While this alone is sufficient, it should be noted that Rinsch's argument that it would have been "absurd" to spend the full $11 million on the Task List items, which he testified at most would cost only $500,000 to complete, Tr. 879:20-22, was

5

clearly contradicted by the testimony that Rinsch gave at a previous arbitration that was received in evidence here. In that arbitration, when asked whether he had agreed "to use the $11 million for the purposes listed" in the Task List, Rinsch answered without qualification: "[Y]es. Yeah." GX 1006C at 5. He further claimed he had in fact spent $12 million on the Task List items. GX 1011D. A jury could therefore also conclude that he had repeatedly lied about this very matter.

Second, the evidence presented at trial also supported the finding of Rinsch's intent to defraud Netflix in order to obtain the $11 million. Whether a defendant harbors the requisite intent is classically a jury question. See United States v. Atilla, 2018 WL 791348, at *3 (S.D.N.Y. Feb. 7, 2018). Though Rinsch took the stand at trial and denied any intent to defraud Netflix, a jury may draw "negative inferences" from a defendant's trial testimony, United States v. Bonventre, 2014 WL 3673550, at *3 (S.D.N.Y. July 24, 2014). Here, the jury had the ability to evaluate Rinsch's credibility and weigh his testimony against the evidence offered by the Government.

As noted, Rinsch's prior sworn testimony at an arbitration concerning the same transactions was received in evidence at his criminal trial. Rinsch acknowledged at the arbitration that it "would [have] be[en] fraud" to use the $11 million to purchase

luxury vehicles for himself. GX 1009E at 3-4. Yet the trial evidence established that is precisely what he did.

While, again, this is more than sufficient to establish fraudulent intent, a reasonable jury could also discount the argument presented by Rinsch and his counsel at trial that the $11 million payment was intended as a reimbursement for previously completed milestones. The March 4, 2020 proposal from Noon stated explicitly that the payment "shall not represent an acknowledgment of any of the contractual milestones." GX 6358 at 5-6. Rinsch accepted those terms. See GX 6358; GX 6359.

It follows from the above that Rinsch's Rule 29 motion borders on the frivolous. And while, with respect to his Rule 33 motion, the Court may within limits weigh evidence and assess credibility independent of the jury, the Court here finds that the jury got it right and that the credible evidence of Rinsch's intentional defrauding Netflix of $11 million was, as the above examples illustrate, overwhelming.

IV.  Conclusion

For the foregoing reasons, Rinsch's motion seeking relief under Rule 29 or Rule 33 is hereby denied. The Clerk of Court is respectfully directed to close ECF No. 77.

SO ORDERED.

New York, NY  
March 23, 2026

_____  
JED S. RAKOFF, U.S.D.J.

7