MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

tkasulis@maglaw.com
212-880-9555

COUNSEL
PIPPA HYDE***
KEFIRA WILDERMAN

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

August 28, 2026

**BY ECF**

Hon. Jed S. Rakoff
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

**RE: United States v. Carl Rinsch,**
**25 Cr. 85 (JSR)**

Your Honor:

We write in reply to the government's August 27, 2026 opposition and in further support of our August 24, 2026 motion for bail pending habeas or an adjournment of Mr. Rinsch's surrender date. From the government's papers, four themes emerge.

*First*, the government either does not understand or is committed to minimizing the mental issues that plagued Mr. Rinsch during both the offense conduct and trial. *Second*, the government erroneously believes that there is nothing trial counsel could have done to remedy this situation. *Third*, the government downplays the prejudice Mr. Rinsch suffered by [redacted] while trying to defend himself in a complex white-collar case. *Fourth*, the government would turn the "exceptional circumstances" test into a near bar on relief.

The government is wrong on all counts.[1]

[1] The government also argues that the motion should be denied because Mr. Rinsch has not yet filed his habeas petition, even though he has committed to doing so, explained his Constitutional claim in great detail, and provided expert reports to the Court and the government in support of his position. The government puts form over substance. Even without express statutory authority, "the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *see In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) ("In spite of the lack of specific statutory authorization, it is within the inherent power of a District Court of the United States to enlarge a state prisoner on bond pending hearing and decision on his application for a writ of habeas corpus."). In the same way that district courts often entertain motions for bail pending appeal at the close of sentencing even though no notice of appeal has yet been filed, the

**I. The Mental Issues Identified in the Expert Reports Were Significant, Complex, and Pronounced**

The alleged wrongdoing set forth in the Indictment began in the Fall of 2019 and continued through the Fall of 2022. Before that period, in Spring 2019, [redacted]

Lay witnesses of all stripes—family, friends, purported victims—confirm the extent of Mr. Rinsch's illness. [redacted]

The government takes issue with the idea that these psychological issues—diagnosed by three different doctors—could have hindered Mr. Rinsch at trial. After all, they say, Mr. Rinsch provided trial testimony during which he was "clearly alert and cogent." Gov. Opp. at 14 n.9. There is certainly something to be said for the eye test, but we respectfully suggest that recollections of comportment in the courtroom should not trump medical diagnoses from multiple experts.

In any case, Mr. Rinsch's debility *was* evident to non-experts during the case. The Federal Defenders saw it. *See* [redacted] Mr. McGuinness saw it. *See* Opening Br. at 11 [redacted] Even the government has not always been so sanguine about how Mr. Rinsch looked on the stand. (*See* Trial Tr. at 1099 ("You saw him squirming on the stand. He had no answer. They said he was confused.").) The record indicates he was indeed confused, asking for questions to be restated multiple times and having to admit he sometimes did not

---

Court here may consider Mr. Rinsch's bail application. This Court's decision in *United States v. Haney* is not to the contrary, as it appears the defendant in that case had not filed a habeas petition nor had any intention of doing so. 454 F.Supp.3d 316, 325 (S.D.N.Y. 2020).

understand what he was being asked. (Trial Tr. 879:7, 886:4, 888:19-23; 915:13-16; 917:1-10; 967:8-13; 978:14-23; 981:15-20.)

These were real, documented mental health conditions that compromised Mr. Rinsch's ability to participate in his defense and to give the jury a complete account of what happened.

## II. There Were Steps That Mr. McGuinness Should Have Taken to Remedy the Situation and Protect Mr. Rinsch's Constitutional Rights

There should be no doubt that trial counsel was on notice that Mr. Rinsch had both serious mental issues during the time of the alleged offense and ongoing mental troubles that made preparing for trial difficult. Counsel knew about [redacted] He knew they had retained an expert. [redacted] He was receiving nonsensical communications from Mr. Rinsch. Nevertheless, the government shrugs, there was nothing for trial counsel to do. [redacted]

Not so. As evidence of mental illness piled on his desk from every direction, counsel had a duty to investigate further. The government does not dispute that "[t]rial counsel provides deficient performance if he fails to investigate a defendant's medical history when he has reason to believe that the defendant suffers from mental health problems." *Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004); *see Porter v. McCollum*, 558 U.S. 30, 40 (2009) ("decision not to investigate" defendant's "mental health or mental impairment" not excused by defendant's "fatalistic or uncooperative" attitude). Mr. McGuinness should have asked the Court to approve funds to hire an expert to evaluate Mr. Rinsch and learn why his client was resistant to a mental health defense. He would have been told by such an expert—as every subsequent expert in the case has said—[redacted] was affecting his decision making about mounting a defense now. He could have worked with the expert to explain that to Mr. Rinsch. They could have [redacted] Letter from Dr. Alisa J. Land to Counsel of Carl E. Rinsch (Aug. 27, 2026) (filed herewith). A clear-thinking client would have made the decision to present the strongest defense to negate mens rea. But Mr. McGuinness did not have a clear-thinking client because he did not investigate the issue.

*Dean v. Superintendent, Clinton Correctional Facility* is not to the contrary. In that case, the Second Circuit affirmed the denial of habeas for a defendant who claimed his lawyer presented an insanity defense over his objection. 93 F.3d 58, 63 (2d Cir. 1996). In so doing, the Court noted the law was unsettled on whether the lawyer or the client owned the final decision

over presenting a defense. *Id.* at 61 ("[T]he case law reveals significant uncertainty surrounding the constitutional status of a defendant's right to reject an insanity defense."). But the issue in *Dean* was solely whether the defense should have been *mounted*. The issue here is that trial counsel did not even *investigate* his client's condition sufficiently enough to have an informed conversation with him about the issue. Indeed, the client invited him to do so. On September 3, 2025, Mr. Rinsch said to Mr. McGuinness: "Questions pertaining to mental health, if a concern, should be directed towards medical professionals, namely my psychiatrist, Dr. Allan Chroman." Mr. McGuinness did not even contact Dr. Chroman—an approach not foresworn by his client but actually *encouraged*. It is black-letter law that such a failure to investigate is ineffective assistance.

This is doubly true on the issue of competence—which the government does not take up at all in its opposition. The duty to investigate extends to a defendant's competency. *See, e.g.*, *Mullis v. Lumpkin*, 47 F.4th 380, 392 (5th Cir. 2022) ("Where an attorney has reason to believe that his client may be incompetent, effective representation may require him to inquire beyond a clean bill of mental health from a court-appointed psychiatrist."); *Williamson v. Ward*, 110 F.3d 1508, 1513–1521 (10th Cir. 1997) (affirming ineffective assistance holding based on "failure to investigate and use the evidence of [defendant] mental illness"); *Agan v. Singletary*, 12 F.3d 1012, 1018 (11th Cir. 1994) ("[C]ounsel has a duty to investigate a client's competency to stand trial or plead guilty."); *see also* ABA Criminal Justice Standards for the Defense Function 4-5.2(c) (4th ed. 2017) ("If defense counsel has a good faith doubt regarding the client's competence to make important decisions, counsel should consider seeking an expert evaluation from a mental health professional, within the protection of confidentiality and privilege rules if applicable."); *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (recognizing that "[p]revailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice . . . are guides to determining what is reasonable").

There are multiple approaches Mr. McGuinness could have employed on the issue. He could have moved for a competency evaluation under 18 U.S.C. § 4241(a). The standard for such a motion would have been easily met. *Id.* (court should grant motion if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Then trial counsel would have had an answer one way or the other. If Mr. McGuinness thought that would be too drastic, he could have "consider[ed] seeking an expert evaluation from a mental health professional, within the protection of confidentiality and privilege rules." ABA Criminal Justice Standards for the Defense Function 4-5.2(c). If that evaluation raised a real concern about competency, counsel could then go to the Court with a request for a Section 4241(a) evaluation. If Mr. McGuinness thought *that* was too drastic, he could first have interviewed the defendant's family and friends to see if they were concerned about the way he was acting or talking. We know from later evaluations that if Mr. McGuinness had done so, even more red flags would

have presented themselves. *Then* he could get an expert evaluation, and *then* he could ask for a competency evaluation.

What he could not do was nothing. In refusing to conduct a reasonable investigation, have an expert appointed, or seek a competency determination, he resigned himself to proceeding to trial with an infirm defendant and a jury that would not hear Mr. Rinsch's best defense on the critical issue of mens rea. Just as a doctor cannot allow a trauma victim to bleed out because he resists care, so too a defense attorney cannot abdicate his fundamental duty to ensure his client is competent. This was not an appropriate way to proceed, and Mr. Rinsch was prejudiced by it.

## III. Mr. Rinsch Suffered Significant Prejudice By Going to Trial [redacted] That He Could Not Even Tell the Jury About

The government advances three principal arguments with respect to prejudice. Each is unavailing. As explained in detail in our opening brief, Mr. Rinsch suffered significant and concrete prejudice in consequence of trial counsel's inexcusable lapses. Opening Br. at 12–16.

*First*, the government erroneously conflates Dr. Bardey's report, submitted in advance of sentencing, with the expert psychological evidence and lay testimony counsel should have developed before trial. Gov. Opp. at 14–15. Its argument with respect to the Court's consideration of the report is, therefore, a non-sequitur. Moreover, the Court's sentencing assessment was not intended to, nor could it, substitute for the jury determination that constitutionally adequate representation would have permitted. In all events, the Court did not have the benefit of a properly developed factual record.

*Second*, the Government's temporal argument fares no better. It dismisses Dr. Land's report on the ground that the report concerned "periods *after* the jury concluded that Rinsch had already made false or misleading statement." Gov. Opp. at 15. The government's quotations of Dr. Land's reports are selective and misleading. [redacted] Trial counsel should have made sure that the jury learned this. Had it, the jury could well have concluded that Mr. Rinsch was unable to coherently understand or explain entertainment financing and accounting, let alone much else.

Third, the government's assertion that evidence of [redacted] likely would have been inadmissible rests on a fundamental mischaracterization of both the theory of defense

and the evidence. Gov. Br. at 16. Mr. Rinsch does not contend, as the government states, that mental illness excused conduct undertaken with fraudulent intent. Rather, he contends that his mental illness prevented him from forming that intent in the first place. Evidence to this effect is a permissible use of mental condition evidence, as the government acknowledges. Gov. Opp. at 9 (quoting *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (noting that the Insanity Defense Reform Act "does not preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime")). And this is precisely the purpose to which trial counsel should have put the evidence [redacted] As the Court instructed the jury, good faith was a complete defense—if Mr. Rinsch genuinely believed the statements that induced Netflix's payment were truthful, he was not guilty of wire fraud. Gov. Opp. at 15 (quoting Trial Tr. 1122–23). [redacted] It went directly to mens rea.[2]

**IV. Mr. Rinsch Has Established Extraordinary Circumstances Supporting Relief**

The facts of this petition and this petitioner at this moment constitute precisely the type of "extraordinary or exceptional circumstances . . . which make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226 (quoting *Ostrer v. United States*, 584 F.2d 594, 597 n.1 (2d Cir. 1978)). Permitting Mr. Rinsch to remain at liberty is critical to [redacted] an essential step in formulating his 2255 petition. Opening Br. at 16–17.

Mr. Rinsch's mental state from 2019 to2022 was central to his trial. Until quite recently, however, [redacted] Dr. Land explains that [redacted] This process remains ongoing. [redacted] This cannot be achieved in prison:

> [redacted]

[2] In addition, Mr. Rinsch was prejudiced by his inability to assist trial counsel prepare his defense. Before and during his trial, [redacted]

> [redacted] (Letter from Dr. Alisa J. Land to Counsel of Carl E. Rinsch (Aug. 27, 2026).)

If Mr. Rinsch surrenders next week, this important treatment will be stopped and with it any hope of [redacted] critical to an effective habeas claim. Since June 2026, he has been in intensive treatment—approximately forty hours to date—with Dr. Land. That treatment produced the documented remission on which every expert in this case now agrees. It is also the clinical baseline on which Dr. Gutheil's forthcoming evaluation depends. The relief requested is not an escape from the process. It is what permits the process to finish.

The government's only response is to once again substitute its lay opinion for those of experts, including Mr. Rinsch's treating psychiatrist. Gov. Opp. at 18 ("By all accounts, Rinsch is currently doing quite well."). Yes, Mr. Rinsch has sought and received treatment, and, yes, he has done well. But as Dr. Land makes clear, Mr. Rinsch requires continued and intensive treatment. Needless to say—and the government does not contest the fact—the Bureau of Prisons is unable to provide such care. In addition to effectively foreclosing further recovery, incarceration will significantly hinder Mr. Rinsch's ability to assist newly retained counsel in his habeas litigation. While we will press to finish it on any schedule set by the Court, the critical work of understanding and presenting Mr. Rinsch's mental state during the years at issue in this case cannot be accomplished if Mr. Rinsch is behind bars. *See* Opening Br. at 16.

While the "extraordinary or exceptional circumstances" standard is exacting, it is not an absolute bar to bail pending habeas as the government would have it. Permitting Mr. Rinsch to remain at liberty pending resolution of his habeas claim is essential to making the habeas remedy meaningful.

* * *

We respectfully ask the Court to grant Mr. Rinsch continued bail pending his petition for habeas corpus. In the alternative, we ask the Court to adjourn Mr. Rinsch's surrender date pending resolution of this habeas litigation, or, if the Court thinks more appropriate, for 90 days.[3]

---

[3] Curiously, the government disputes that the "good cause" standard applies to applications to adjourn surrender dates. Gov. Opp. at 19. This despite the fact that, as we pointed out, this Court has applied the "good cause" standard to applications to adjourn surrender dates. Opening Br. at 6 (citing Order, *United States v. Lopez*, 19 Cr. 323 (JSR) (S.D.N.Y. Jan. 8, 2021), ECF No. 158). Instead, the government asserts, "this Court and others have recognized that the 'extraordinary or exceptional circumstances' standard applies," citing this Court's order in *Austin v. United States*. Gov. Opp. at 19 (citing Mem. Order, 16 Cv. 4446 (JSR), *Austin v. United States*, (S.D.N.Y. Feb. 24, 2020), ECF No. 14). *Austin* is inapposite. It involved a government motion to remand a defendant "pending adjudication of the merits of his petition under 28 U.S.C. § 2255." Mem. Order at 1, 16 Cv. 4446 (JSR), *Austin*, ECF No. 14. The Court said nothing of the standard that applies to an application to adjourn surrender, because no such application was before it. *Id*. Likewise, the only other case cited by the government, *United States*

This relief is necessary to permit Mr. Rinsch to continue his treatment with Dr. Land and allow counsel to safeguard his constitutional rights.

Respectfully submitted,

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.

/s/ *Telemachus P. Kasulis*
Telemachus P. Kasulis
Samuel W. Magaram
565 Fifth Avenue
New York, NY 10017
(212) 880-9555
tkasulis@maglaw.com

*Attorneys for Defendant Carl Rinsch*

---

*v. Hild*, is inapposite. 19 Cr. 602 (RA), 2026 WL 1847397 (S.D.N.Y. June 26, 2026) (addressing motion for bail pending habeas).